IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARTIN SIGSWORTH,  )
                   )
    Plaintiff,     )
                   )
        v.         )  No. 05 C 1888
                   )
CITY OF AURORA, ILLINOIS ET AL.  )
                   )
    Defendants.    )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we grant the motion to dismiss.

## BACKGROUND

Plaintiff Martin Sigsworth ("Sigsworth") began working for the Aurora Police Department ("Department") in 1992. In 1994 Sigsworth was transferred to the Gang Intervention Unit. Sigsworth claims to have led several investigations in the Gang Intervention Unit which resulted in the largest money seizures by the Department at that time. Sigsworth alleges that he was eventually assigned to a task force with the Federal Bureau of Investigation, Bureau of Alcohol, Tobacco and Firearms, and

1

other members of the Aurora Police Department ("Task Force") to combat illegal drug activity. Sigsworth alleges that the Task Force issued warrants for the arrest of a large number of gang members and drug dealers operating in and around Aurora. However, according to Sigsworth, in order to ensure that all the culprits being sought in warrants were apprehended, the Task Force planned a large-scale arrest of all persons named in the warrant on the same day. Sigsworth alleges that on July 24, 2002, the night before the planned arrest, several members of the Task Force "acted in a manner so as to provide general and specific notice of the impending raid" which Sigsworth contends made it possible for several of persons named in the arrest warrants to evade police capture. (A Compl. Par. 29). Sigsworth contends that, in accordance with the policies of the Aurora Police Department, Sigsworth fully reported the events concerning the Task Force to his reporting supervisors, former Deputy Chief Defendant Byron Saum ("Saum"), Defendant Chief William J. Lawler ("Lawler"), and a now retired Lt. Skaggs. Sigsworth alleges that Lawler ordered Sigsworth to remain silent regarding the conduct of others on the Task Force that might enable perpetrators to avoid arrest. Sigsworth also claims that he was subsequently removed from the Task Force and the investigation.

Sigsworth claims that after he reported the alleged Task Force misconduct Defendants conspired against him in retaliation for bringing to light police misconduct. Sigsworth alleges that soon after his report to his superiors about the alleged misconduct of members of the Task Force, another officer who was assigned

to the task force allegedly began making libelous statements about Sigsworth. Sigsworth claims that he confronted the officer about the statements and that a disciplinary action was taken against Sigsworth for his conduct involved in the confrontation. Sigsworth claims that, in an attempt to clear his name, Sigsworth filed a grievance with his union.

Sigsworth also alleges that after he reported the alleged Task Force misconduct, Defendants conspired to deny Sigsworth a promotion to Sergeant. Sigsworth alleges that he was skipped for promotion despite the fact that he was at the top of the promotion list. Sigsworth also alleges that Defendants reduced his evaluation scores and ordered retiring officers to withhold their retirements until a time when Sigsworth was no longer number one on the Sergeant Promotion Eligibility List. Sigsworth brought the instant action and his amended complaint includes a claim alleging violations of 42 U.S.C. § 1983 ("Section 1983") relating to alleged retaliation against him for speaking out on matters of public concern (Count I), a Section 1983 right of freedom of association claim (Count II), a Section 1983 freedom of speech claim (Count III), a Section 1983 due process claim (Count IV), and a Section 1983 conspiracy claim (Count V).

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the

plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegation in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provided little detail . . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion do dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *See Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "at this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "matching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can lead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d

4

at 455. Any conclusions pled, however, must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "one pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. First Amendment Claims (Counts I, II, III and V)

Defendants argue that the court should dismiss Sigsworth's claims in Counts I, II, III and V because the speech in question in the instant action did not relate to a matter of public concern and thus, was not constitutionally protected. Under the *Connick-Pickering* test, a government employee's speech is constitutionally protected if: 1) the employee spoke "as a citizen upon matters of public concern;" and 2) if "the interest of the [employee], as a citizen in commenting upon matters of public concern [outweigh] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005). If the government employee's speech is shown to be protected, the government employer is given "an opportunity to establish that the same action would have been taken in the absence of the employee's protected

5

speech." *Sullivan v. Ramirez* 360 F.3d 692, 697 (7th Cir. 2004).

To determine if the government employee spoke as a citizen on a matter of public concern, the court must examine "the content, form, and context of [the] given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-148. Of these three factors, the Seventh Circuit considers content to be the most important. *See Sullivan v. Ramirez*, 360 F.3d 692, 698 (7th Cir. 2004)(stating that "[c]ontent is the most important factor.").

Generally, courts consider speech regarding "police protection and public safety as a matter of public concern." *See Delgado v. Jones*, 282 F.3d 511, 517 (7th Cir. 2002)(stating that "a communication by a law enforcement officer that contains information essential to a complete and objective investigation of serious criminal activity is content that implicates public concern"). However, communications that are part of an officer's regular job duties are not "matters of public concern." *See Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001)(holding that an officer's negative reports about fellow police officers did not constitute protected speech under the First Amendment, because he was "clearly acting entirely in an employment capacity when he made [the] reports"). More specifically, First Amendment protection will not be warranted if the speech relates to ordinary matters of internal operation and lacks connection to "any matter of political, social, or other concern to the community." *Schad*, 415 F.3d at 674 (quoting *Connick*, 461 U.S. at 146). Furthermore, an inquiry under *Connick* requires the court to determine

whether the "employee's point [was] to bring wrongdoing to light [or] to further some purely private interest" *Delgado*, 282 F.3d at 518 (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985).

In the instant case, Sigsworth alleges that the report he filed with his reporting supervisors was a matter of public concern, and thus was protected speech. Sigsworth, relying on *Delgado*, asserts that his speech was a matter of public concern. In *Delgado*, however, the plaintiff officer went beyond his normal duties and disclosed information pertinent to whether the police chief could perform his duties effectively. *Id.* In the instant action, Sigsworth has not alleged that he went beyond his normal duties to disclose the improper acts of the agents in his report. In fact, Sigsworth specifically acknowledges that he reported the alleged Task Force misconduct in accordance with established Department policies directing him to report such misconduct. (A Compl. Par. 34).

Neither is there any indication in the allegations that Sigsworth was acting as a concerned citizen when he reported the alleged Task Force misconduct. In the Amended Complaint, Sigsworth specifically states that, "in furtherance of the policy of cooperation and in accordance with other policies of the Aurora Police Department, [he] fully reported the events concerning the task force. . . ." (A Compl. Par. 34). Sigsworth, like the plaintiffs in *Gonzalez* and *Schad*, was performing his duties as an investigator and following police department policies when he made his report. *Schad*, 415 F.3d at 675; *Gonzalez*, 239 F.3d at 941-42.

The content of Sigsworth's alleged speech consisted of a report about other officers that were not following required procedures and was a part of the ordinary business of the operation of law enforcement. Sigsworth does not allege that any of the Task Force members were doing anything that violated the law or placed any lives in jeopardy. Rather, his speech solely concerned his perception that certain officers of the Task Force were not acting in accordance with certain policies and thus were jeopardizing the success of the mass arrest. Sigsworth apparently did not agree with the other Task Force members' approach and based upon his disagreement, felt obligated to report their conduct to his superiors. *See Schad,* 415 F.3d at 675 (stating that "[w]hile speech addressing matters of police protection and public safety are matters of public concern, we have cautioned that if every facet of internal operations within a governmental agency were of public concern, and therefore any employee complaint or comment upon such matters constitutionally protected, no escape from judicial oversight of every government activity down to the smallest minutia would be possible"). Thus, based upon Sigsworth's own allegations it is clear that the alleged speech involving the alleged Task Force misconduct did not involve a matter of public concern and that Sigsworth was merely following Department policies rather than speaking out as a concerned citizen. *See Gonzalez,* 239 F.3d at 941-42(finding that "[w]hile police misconduct is certainly a matter of public concern, the internal reports were simply a summary of his findings following his official investigations" and "[t]he few courts that have addressed circumstances

like these have found that the speech was not protected by the First Amendment").

Additionally, Sigsworth alleges that his speech relating to his confrontation with the officer regarding the alleged libelous statements about Sigsworth was a matter of public concern and thus protected speech. Sigsworth contends in his answer to the motion to dismiss that he was voicing his support for the policy of cooperation by confronting the officer. Sigsworth explains in his complaint that he engaged in the confrontation and made the speech to get the officer to stop publishing libelous statements about Sigsworth. There is no indication by the allegations that the alleged libelous statements about Sigsworth placed the public's safety in jeopardy or were in any way related to the public welfare. Sigsworth's reference to the statements by the officer as "libelous statements," (A Compl. Par. 40), indicates that the alleged statements were detrimental to Sigsworth's reputation. Thus, when Sigsworth attempted to stop the officer from continuing to make the alleged libelous statements, Sigsworth was looking after his own reputation and his own interests. Therefore, we grant Defendants' motion to dismiss the First Amendment claims in Counts I, II, III, and V.

II. Due Process Claim (Count IV)

Defendants also argue that the court should dismiss the due process claim (Count IV) because Plaintiff does not have a property interest in the promotion to Sergeant. In order to prevail on a due process claim a plaintiff must establish: "(1)

that she had a constitutionally protected property interest, (2) that she suffered a loss of that interest amounting to a deprivation and (3) that the deprivation occurred without due process of law." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005). Property interests do not stem from the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005). In order to have a property interest in a particular benefit, "a person . . . must have more than a unilateral expectation of it [but] instead must have a legitimate claim of entitlement to it." *Upadhya v. Langenberg*, 834 F.3d 661, 665 (7th Cir. 1987).

In the instant case, Sigsworth had an expectation to be promoted to Sergeant. Pursuant to 65 ILCS 5/10-1-13, the City can select a candidate for promotion from only the top five candidates on the list provided by the Civil Service Commission. Sigsworth asserts that it has been a long standing custom and promulgated policy of the City to fill each vacancy by promoting the top ranked candidate from the list. Sigsworth claims that because he was the top ranking candidate, he had a property interest in the vacant Sergeant position. However, Sigsworth has acknowledged that "policy" he refers to was nothing more than his perception based upon past selections by the City. Sigsworth does not allege that any promises were made to him that he would be selected if he was at the top of the list. Neither do any of his allegations indicate that the City did not wholly retain its discretion to chose from

any of the top five candidates on the promotion list. *See Town of Castle Rock, Colo. v. Gonzales*, 125 S.Ct. 2796, 2803 (2005)(stating that the Court's cases "recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). Therefore, since Sigsworth's allegations indicate that he does not have a legitimate claim of entitlement to the promotion to Sergeant, we grant Defendants' motion to dismiss the due process claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 29, 2005